IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO.: 3:13-cv-00412-RJC-DSC

| | |
|---|---|
| **ANDRITZ HYDRO CORP. f/k/a VA TECH HYDRO USA CORP. AND ANDRITZ (USA) INC.,**<br><br>  Plaintiffs,<br><br>v.<br><br>**PPL MONTANA, LLC and PPL ENERGY SUPPLY, LLC**<br><br>  Defendants. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Defendants' "Motion to Dismiss First Amended Complaint for Lack of Personal Jurisdiction" (document #19) and "Motion to Dismiss First Amended Complaint Based on Tolling Agreement" (document #21), as well as the parties' briefs and exhibits. See documents ##20, 22 and 26 - 33.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the "Motion to Dismiss First Amended Complaint for Lack of Personal Jurisdiction" be denied and that the "Motion to Dismiss First Amended Complaint Based on Tolling Agreement" be denied without prejudice, as discussed below.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

As discussed in Section II.B., Defendants' affirmative defense based upon the tolling agreement is not properly before the Court. Accordingly, this recitation will focus on jurisdictional facts.

Plaintiff Andritz Hydro Corp. ("Andritz") is a North Carolina corporation with its principal place of business in Charlotte. Plaintiff Andritz (USA) Inc. ("Andritz USA") is a Delaware corporation with its principal place of business in Georgia.

Defendant PPL Montana, LLC ("PPLM") is a Delaware limited liability company. Defendant PPLM's sole member is PPL Montana Holdings, LLC, also a Delaware limited liability company. The sole member of PPL Montana Holdings, LLC, is PPL Generation, LLC, a Delaware limited liability company. The sole member of PPL Generation, LLC, is Defendant PPL Energy Supply, LLC ("PPL Energy"), a Delaware limited liability company. The sole member of Defendant PPL Energy is PPL Energy Funding Corporation, a Pennsylvania corporation, with its principal place of business in Allentown, Pennsylvania.

The parties' dispute arises from a contract ("the Contract") and a guaranty ("the Guaranty") involving Defendants' Rainbow Hydro-Electric Turbine Redevelopment Project ("the Project") in Great Falls, Montana. Defendants dispute that a significant portion of the work under the Contract was performed in North Carolina. In support of their argument, Defendants rely on the Contract's definition of the terms "work site," "job site," and "site" as being PPLM's "facility where the Work will be performed located at Great Falls, MT."

Resolving all factual disputes in favor of the nonmoving party, Andritz has submitted Declarations and other exhibits establishing that PPLM initiated the first contact between the parties on February 3, 2007. PPLM's outside engineering/consulting firm contacted Andritz

requesting preliminary prices for work that Andritz might perform on the Project. Andritz performed some of that budgeting work in Charlotte. Andritz also contacted other companies (both affiliated and unaffiliated with Andritz) around the world in order to provide a preliminary budget to PPLM from its Charlotte offices.

On September 20, 2007, PPLM sent a Request for Proposal ("RFP") to Andritz, soliciting a formal bid to engineer, design, fabricate, deliver, install, construct, test and commission a turbine-generator and related equipment for the Project. PPLM also agreed to pay Andritz up to $187,000 for the work it performed in preparing the bid. PPLM knew that the bid would be prepared in Charlotte. PPLM also knew that the design work would be performed by Andritz in Charlotte.

On March 27, 2008, six PPLM representatives travelled to Charlotte for Project meetings with Andritz and the other companies involved in the design of the Project. These meetings lasted for two days. PPLM had further contact with Andritz by telephone, email, and other means of communication before the Contract was executed.

On July 28, 2008, Andritz and PPLM executed the Contract. Andritz required Defendant PPL Energy to execute the Guaranty as a condition of entering into the Contract with PPLM. The Guaranty provided that all necessary notices would be sent to Andritz's Charlotte office.

Declarations and exhibits submitted by Andritz establish that it performed a substantial portion of its work on the Project in Charlotte. Andritz's employees kept time/charge records documenting over $6 million in total charges for engineering and project management services performed by Andritz's Charlotte employees on the Project. Well over sixty-seven percent of that work was performed in Andritz's Charlotte office. In addition, Charlotte employees managed the procurement of more than $25 million of equipment supplied by Andritz for the

Project. With PPLM's knowledge and approval, Andritz engaged vendors located in or near Charlotte for subcontracting work on the Project.

Andritz has also documented that numerous PPLM representatives including Dale Zeisloft (Project Manager), Mike Magnan (Project Manager), Don Reid (Electrical Engineer), Christopher Barnas (Design Engineer), Bill Roeder (Project Engineering Manager), Steve Miller (Site Manager), and Bill Riebling (PPL Generation, LLC's Vice President of Engineering and Construction) attended Project meetings in Charlotte. These meetings occurred on eight different days during 2009, 2010, and 2012.

In addition to those meetings, PPLM's Bill Roeder came to Charlotte for testing of the Unit Controls System for the Project. Andritz's supplier for that system was located in Charlotte, and Roeder attended the testing and signed the test report. PPLM and Andritz representatives in Charlotte communicated throughout the Project on an almost daily basis with tens of thousands of emails exchanged between the parties.

Andritz also contends that PPLM employee Robert Dunlap lived and worked in Charlotte. Defendants respond that Dunlap was an independent contractor and not their employee. Regardless of his status, Dunlap represented Defendants' interests in Charlotte for some period of time.

On June 20, 2013, Plaintiffs filed their Complaint in Mecklenburg County Superior Court. As amended, the Complaint alleges state law claims for breach of contract, breach of guaranty, and for a declaratory judgment that PPL is not entitled to liquidated damages. Plaintiffs seek damages in excess of five million dollars.

On July 18, 2013, Defendants removed this action to the United States District Court for the Western District of North Carolina alleging diversity of citizenship subject matter jurisdiction. Removal has not been challenged and appears proper.

On June 21, 2013, Defendants filed their Motions to Dismiss which have been fully briefed and are ripe for determination.

## II. DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

In evaluating a motion to dismiss for lack of personal jurisdiction, all factual disputes must be resolved in favor of the non-moving party. That party must make a prima facie showing that exercise of personal jurisdiction is proper. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); Vishay Intertechnology, Inc. v. Delta International Corp., 696 F.2d 1062, 1064 (4th Cir. 1982); and General Latex and Chemical Corp. v. Phoenix Medical Technology, Inc., 765 F. Supp. 1246, 1248 (W.D.N.C. 1991).

Analysis of personal jurisdiction has traditionally involved two determinations: "whether the [particular state's] long-arm statute authorizes the exercise of jurisdiction in the circumstances presented and ... whether the exercise of jurisdiction comports with Fourteenth Amendment due process standards." Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). However, because "the North Carolina long-arm statute [N.C. Gen. Stat. § 1-75.4 ] has been interpreted as the legislature's attempt to allow the exercise of personal jurisdiction in all cases where such jurisdiction does not contravene due process, [the] normal two-step inquiry merges into one." Id., citing Dillon v. Numismatic Funding Corp., 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977).

5

The exercise of personal jurisdiction comports with due process when the defendant purposefully established "minimum contacts" in the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Ellicott Mach., 995 F.2d at 477. The court's exercise of personal jurisdiction must also comport with traditional notions of "fair play and substantial justice." World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (personal jurisdiction exists where defendant introduces product into stream of commerce with expectation that citizens in forum state will use the product).

Other cases have emphasized that the minimum contacts must be "purposeful." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). This "purposeful" requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non- resident to defend himself in a forum state when the non-resident never purposefully availed himself of the privilege of conducting activities within the forum state, thus never invoking the benefits and protections of its laws. See Hanson v. Denckla, 357 U.S. 235, 253 (1958). Moreover, "this purposeful requirement helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." Plant Genetic Systems, N.V. v. Ciba Seeds, 933 F.Supp. 519, 523 (M.D.N.C. 1996), citing Burger King, 471 U.S. at 472; and World Wide Volkswagen, 444 U.S. at 297.

A court's exercise of personal jurisdiction may be general or specific. General personal jurisdiction exists where the non-resident defendant has had continuous and systematic contact with the forum state, even if the action does not arise out of the non-resident defendant's contact with the forum state. Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414-15 (1983). Specific jurisdiction involves the exercise of personal jurisdiction over a defendant in an action arising out of the defendant's contacts with the forum state. See Helicopteros, 466 U.S. at

414; McGee v. International Life Ins. Co., 355 U.S. 220, 225 (1957) (single contract which is subject of the action and which was formed in forum state provides basis for personal jurisdiction); English & Smith v. Metzger, 901 F.2d 36, 39 (4th Cir. 1990) (same); and Prince v. Illien Adoptions Int'l Ltd., 806 F.Supp. 1225, 1227 (D. Md. 1992) (same).

Defendants have not had continuous and systematic contact with North Carolina. For personal jurisdiction to exist, it must be based upon Defendants' actions involving the Project, the Contract, and the Guaranty. When a court asserts specific jurisdiction over a non-resident defendant, the due process requirement of fair warning still mandates that the non-resident defendant have purposefully availed itself of the privilege of conducting activities within the forum state. Burger King, 471 U.S. at 478-79 (the mere existence of a contract with a resident of a forum does not establish the necessary contacts for due process); Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127-28 (4th Cir. 1986); Federal Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 660 (4th Cir. 1989); Jim Myers & Son, Inc. v. Motion Industries, Inc., 140 F.Supp.2d 595, 601 (W.D.N.C. 2001) ( but "by purposefully contracting with a[n] [equipment] supplier that [third-party defendant] knew was based in North Carolina, it had fair warning that it might be subject to litigation in this forum") (emphasis in original).

The Fourth Circuit has "synthesized the due process requirement for asserting specific personal jurisdiction in a three-part test . . . (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)).

7

In determining whether jurisdiction is constitutionally reasonable, courts are to consider factors such as: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." Consulting Eng'rs, 561 F.3d at 279. As the Fourth Circuit has explained, "[m]ore generally, our reasonableness analysis is designed to ensure that jurisdictional rules are not exploited 'in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a 'severe disadvantage' in comparison to his opponent.'" Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 217 (4th Cir. 2001) (quoting Burger King Corp., 471 U.S. at 478).

As the Fourth Circuit recently concluded, in the final analysis, "[f]airness is the touchstone of the jurisdictional inquiry." Tire Eng'g. & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 301 (4th Cir. 2012), cert. denied, 133 S. Ct. 846 (2013).

Applying those legal principles to the record in this case, Plaintiffs have met their burden of establishing a prima facie case that exercise of personal jurisdiction is proper. Defendants purposefully availed themselves of the privilege of conducting business in North Carolina when PPLM requested a pre-bid budget from Andritz and subsequently sent the RFP to Andritz's Charlotte office. See CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 295 n.17 (4th Cir. 2009) (whether the defendant initiated contact with the forum state is a factor that is afforded "special weight" in the due process analysis); Pan-Am. Products & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 682 (M.D.N.C. 2011) ("the Fourth Circuit has

8

given great weight to the question of who initiated the contact between the parties") (quotation omitted); Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc., 611 S.E.2d 179, 185 (N.C. Ct. App. 2005) (emphasizing that which party initiates contact is a "critical factor" in the purposeful availment analysis) (quotation omitted). The work performed by Andritz on the RFP was so significant that PPLM agreed to compensate them up to $187,000 even if their bid was not accepted. Most of this work was performed in North Carolina.

Defendants knew they were contracting with and making a guaranty to a North Carolina corporation for work to be performed substantially in North Carolina. PPLM executed the Contract and sent it to Andritz in Charlotte. Defendants had a representative based here for at least some period of time and many of its personnel traveled to Charlotte for meetings before and after the Contract was executed.

Plaintiffs' claims arise out of the Contract and Guaranty. Accordingly the second component of the personal jurisdiction test -- whether the Plaintiffs' claims arise out of those activities directed at the State; -- is met. Consulting Engineers Corp., 561 F.3d at 278.

For those same reasons, Plaintiff has met the third component -- constitutional reasonableness. None of the factors enumerated by the Fourth Circuit provide a basis to decline personal jurisdiction here. Consulting Eng'rs, 561 F.3d at 279. Defendants are sophisticated business entities capable of defending themselves in this state. As Defendants concede, North Carolina clearly has an "interest in providing a forum for resolution of conflicts arising in North Carolina." Banc of Am. Sec., 611 S.E.2d at 186. Andritz is a North Carolina corporation with its only North American offices in Charlotte. It is certainly no less convenient for Defendants to defend this action in North Carolina than it would be for Andritz to defend the action in Pennsylvania, where most of PPLM's representatives who worked on the Project were based, or

9

in Montana. In short, the exercise of personal jurisdiction by a North Carolina court will not "make litigation so gravely difficult and inconvenient that a party unfairly is at a 'severe disadvantage' in comparison to his opponent.'" Christian Sci. Bd. of Directors of First Church of Christ, Scientist, 259 F.3d at 217 (quoting Burger King Corp., 471 U.S. at 478).

Defendants' purposeful activities directed at a North Carolina company resulted in millions of dollars of work being performed in this State and gave rise to the present dispute. The exercise of personal jurisdiction by a North Carolina court is eminently fair. Tire Eng'g. & Distribution, LLC, Ltd., 682 F.3d 292, 301 (4th Cir. 2012) ("[f]airness is the touchstone of the jurisdictional inquiry"), cert. denied, 133 S. Ct. 846 (2013). Accordingly, the undersigned respectfully recommends that Defendants' "Motion to Dismiss First Amended Complaint for Lack of Personal Jurisdiction" be denied.

### B. Motion to Dismiss Based on Tolling Agreement

Defendants base their second Motion to Dismiss on an alleged "tolling agreement" between them and Plaintiffs providing that no litigation could be commenced based upon the Project, Contract or Guaranty until after December 31, 2013.[1] Defendants do not state a basis for their Motion other than to request that the Court "enforce the Tolling Agreement between" the parties. Document #21 at 1. Defendants do not specify whether their Motion is brought pursuant to Rule 12(b)(6), Rule 12(c),[2] or any other Rule of Civil Procedure.

---

[1] Plaintiffs dispute the existence of this agreement.

[2] Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). In resolving a motion for judgment on the pleadings, the court must accept all of the non-movant's factual averments as true and draw all reasonable inferences in its favor. Bradley v. Ramsey, 329 F. Supp.2d 617, 622 (W.D.N.C. 2004). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Id. The court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." Philips v. Pitt

The undersigned does not reach the merits of Defendant's Motion because any affirmative defense is not properly before the Court. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (district court may reach merits of affirmative defense when ruling on motion to dismiss "if all facts necessary to the affirmative defense clearly appear on the face of the complaint.") The purported tolling agreement is not attached to or even referenced in the First Amended Complaint. Defendants have simply attached a copy of the alleged agreement to their "Brief in Support …" (document #22).

Moreover, Defendants have yet to file an answer and properly plead this defense. See Yassan v. J.P. Morgan Chase & Co., 708 F.3d 963, 975 (7th Cir. Feb 28, 2013) ("[d]ismissing a case on the basis of an affirmative defense is properly done under Rule 12(c), not Rule 12(b)"); Brownback Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012) (dispositive motions based on affirmative defenses are most appropriately adjudicated on a motion for judgment on the pleadings after being raised in the answer).[3]

Accordingly, the undersigned respectfully recommends that Defendants' "Motion to Dismiss First Amended Complaint Based on Tolling Agreement" (document #21) be denied without prejudice to Defendants' right to file a motion for judgment on the pleadings after filing an answer containing the affirmative defense.

---

Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Fed.R.Civ.P. 10(c) (stating that "an exhibit to a pleading is part of the pleading for all purposes.") Unlike a Rule 12(b)(6) motion, the court may consider the answer as well on a Rule 12(c) motion. Alexander v. City of Greensboro, 801 F.Supp.2d 429, 433 (M.D.N.C. 2011).

[3]The undersigned credits the work of the Honorable Amy St. Eve, United States District Judge for the Northern District of Illinois, and Michael Zuckerman, Esquire, in their article The Forgotten Pleading, Federal Courts Law Review, August 27, 2013 at 152.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that:

1. Defendants' "Motion to Dismiss First Amended Complaint for Lack of Personal Jurisdiction" (document #19) be **DENIED**.

2. Defendants' "Motion to Dismiss First Amended Complaint Based on Tolling Agreement" (document #21) be **DENIED WITHOUT PREJUDICE** to Defendants' right to file a motion for judgment on the pleadings after filing an answer containing the affirmative defense.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: September 13, 2013

David S. Cayer
United States Magistrate Judge