UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-412-RJC-DSC

| | |
|---|---|
| ANDRITZ HYDRO CORP. f/k/a<br>VA TECH HYDRO USA CORP., and<br>ANDRITZ (USA) INC.,<br><br>    Plaintiffs,<br><br>vs.<br><br><br>PPL MONTANA, LLC, and<br>PPL ENERGY SUPPLY, LLC<br><br>    Defendant(s). | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **ORDER**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** comes before the Court on Defendants' Motion for Partial Summary Judgment to Enforce Tolling Agreement, (Doc. 37), Plaintiffs' Motion to Enjoin Prosecution of Later-Filed Action, (Doc. 49), Defendants' Motion to Transfer Venue for Consolidation of Cases, (Doc. 51), and all relevant briefs and exhibits. (Docs. 38, 38-1, 39, 40, 41, 43, 49:1-4, 50, 52, 54, 54:1-2, 55, 55:1-10, 56, 57). On February 13, 2014, the Magistrate Judge denied without prejudice Defendants' Motion to Transfer as duplicative of issues presently in front of this Court. (Doc. 58). The Court here rules on each motion, including the Motion to Transfer Venue. Each motion has been met with vigorous opposition, the matters have been extensively briefed, and they are now ripe for review.

**I.    BACKGROUND**

    A.    <u>Procedural History</u>

This case contains a byzantine procedural history born out of a single question: whether the parties formed a tolling agreement, which Plaintiff violated by filing this suit. Alleging

breach of contract and seeking declaratory relief, Plaintiffs Andritz Hydro Corp. (Andritz) and Andritz (USA) filed suit in North Carolina state court on June 20, 2013, which Defendants PPL Montana, LLC (PPLM) and PPL Energy Supply, LLC (PPLE) removed to this Court on July 18, 2013. (Doc. 1:1-2).

Contending that a valid tolling agreement existed between the parties, Defendants moved for partial summary judgment on October 21, 2013. (Doc. 37). On January 2, 2014, Defendants filed a companion suit in federal court in the Eastern District of Pennsylvania (EDPA). Four days later, Plaintiffs moved this Court to enjoin prosecution of the EDPA case. (Doc. 49). Another four days later, Defendants filed their own motion to transfer this case to EDPA for consolidation with the case filed there. (Doc. 51).

B. Relevant Facts

In July 2008, Andritz and PPLM, the primary actors in this case, entered into a contract in which Andritz agreed to provide machinery, equipment, and services to PPLM for installation at a development project in Great Falls, Montana. Andritz (USA) the parent company of Andritz, provided a guaranty to PPLM of Andritz' performance under the contract. (Doc. 1-1¶1). For its part, PPLM agreed to coordinate the work of Andritz with that of separate contractors engaged by PPLM. (Id. ¶8). Alleging that PPLM and other contractors retained by PPLM delayed, interfered, and otherwise caused them to incur increased costs without reimbursement, Andritz filed suit in North Carolina Superior Court for breach of contract and declaratory judgment seeking damages in excess of $5 million. (Id. ¶2). At some point prior to the filing of suit in North Carolina court, PPLM informed Andritz that it intended to assess over $4 million in liquidated damages owed under the terms of the contract.

2

1. Tolling Agreement

Prior to commencing litigation, in a series of communications between respective counsel, the parties discussed resolving their disputes through mediation. As part of these communications, the parties discussed whether to execute a tolling agreement that would remain in effect until December 31, 2013. The relevant dates and contents of the communications are as follows:

**April 12, 2013**: Andritz' Regional General Counsel, Veronica O'Brien, emailed Damon Obie, Senior Counsel at PPL Services, an affiliate of PPLM, to discuss possible alternative dispute resolution. (Doc. 38-1).

**May 3, 2013**: Following discussions, O'Brien emailed Obie a proposed mediation schedule and noted that Andritz "would like to enter into a mutual tolling agreement if we pursue this route in order to avoid having to file and stay any claims that may be expiring this year." The proposed schedule stated that the parties would exchange draft versions of the tolling agreement on May 15, 2013, and execute a final tolling agreement on June 1, 2013. (Doc. 38-1: Ex 2).

**May 20, 2013**: Obie emailed O'Brien with an amended schedule listing May 22, 2013 as the date to finalize mediation process and June 17, 2013 as the date for both parties to submit claims and execute the tolling agreement. (Doc. 38-1: Ex 3).

**June 3, 2013**: Michael Castellon, an attorney for Andritz (USA), emailed Obie to note that he had reviewed the tolling agreement and had some minor revisions. In the email he wrote: "If you agree with these, I believe we can go ahead and get this signed." (Doc. 38-1: Ex 4).

**June 7, 2013**: Castellon emailed Obie a revised version of the tolling agreement and noted that: "I understand you will present the revised Tolling Agreement to your client for signature, hopefully to be signed by early next week. After signing, we can each present our four proposed mediator names to the other to consider." (Doc. 38-1: Ex 5).

**June 17, 2013**: Obie emailed Castellon in which he noted "PPL's need to modify the timeline to allow PPL an opportunity to submit additional claims that relate to items on the punch list. While we are interested in working with Andritz to resolve these claims in an expeditious manner . . . PPL needs the flexibility to assert additional claims depending on Andritz position with respect to the punch list items and Andritz other remaining contractual obligations." (Doc. 38-1: Ex 6).

**June 17, 2013**: In the same email, Obie stated that he "attached a copy of the tolling agreement. Unless you think it's necessary, I do not plan on forwarding the original document. I assume you will have the attached document signed and email copy back to me." (Id.).

**June 21, 2013**: Castellon communicated to Obie that Andritz filed this suit in North Carolina state court. (Doc. 1-1).

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine material fact exists, if, in viewing the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, a reasonable juror could return a verdict for the non-moving party. Id.

The moving party has the burden of establishing that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). If the moving party meets its burden, then the non-movant must set forth specific facts that would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23.

## III. DISCUSSION

### A. Tolling Agreement

1. Choice of Law

The tolling agreement directs that it shall be governed by the laws of Pennsylvania, the jurisdiction in which PPLM is located. (Doc. 38-1: Ex 7). As a federal court sitting in diversity, this Court must apply the substantive law of North Carolina, including its choice of law rules. See Private Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312. Normally, where the parties to a contract have agreed that a given jurisdiction's substantive law will govern the interpretation of the contract, then a North Carolina court will give effect to that provision. Tanglewood Land Co., Inc. v Byrd, 261 S.E.2d 655, 656 (N.C. 1980). However, in this instance, where the issue is whether the parties actually formed an agreement, rather than the interpretation of a contract provision, the Court applies the choice of law rules of North Carolina.

For contract claims, the governing law of North Carolina is determined by the place where the contract was formed. Fortune Ins. Co. v. Owens, 526 S.E.2d 463, 466 (2000). The place where a contract is formed is determined by the "place at which the last act was done by either of the parties essential to a meeting of the minds." Fast v. Gulley, 155 S.E.2d 507, 510 (N.C. 1967). Here, the record is not clear as to whether the last act essential to a meeting of the minds occurred (if at all) in North Carolina or Pennsylvania. This question, however, does not involve an overly technical question of contract law, but turns on whether the parties have reached an agreement. As the substantive laws of North Carolina and Pennsylvania do not differ substantially – both require a meetings of the minds as to all material terms and intent to form an agreement – North Carolina law can be applied here.

2. Contract Formation

The main issue is whether the communications between the parties were sufficient to

form a contract, or whether these communications were only negotiations that would have to be finalized by a written agreement signed by both parties. PPLM argues that the parties had arrived at a full agreement as to all terms, and that the document prepared by Andritz and sent, via counsel, to PPLM constituted an offer, which they, in turn, accepted. In contrast, Andritz argues that the communications were merely negotiations as Mr. Castellon never possessed the authority to make an offer, and that their failure to sign the agreement establishes that no contract was formed by the parties.

"The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." Snyder v. Freeman, 266 S.E. 593, 602 (N.C. 1980). Where the minds of the parties "meet upon a proposition which is sufficiently definite to be enforced, the contract is complete, although it is in the contemplation of the parties that it shall be reduced to writing as a memorial or evidence of the contract; but if it appears that the parties are merely negotiating to see if they can agree upon terms, and that the writing is to be the contract, then there is no contract until the writing is executed." Elk v. North State Ins. Co., 75 S.E. 808, 810-11 (N.C. 1912).

To prevail at summary judgment, PPLM must demonstrate that there exists no question as to the material fact that resides at the heart of this motion: whether the parties intended to form an agreement. Even a cursory glance at the record establishes that PPLM cannot meet this burden, for, at a minimum, the issue of Andritz' intent to enter into a contract (and Mr. Castellon's authority to bind the company) are open questions of material fact.

More significantly, the evidentiary record strongly supports Andritz' contention that it did not intend to be bound by the tolling agreement until it had been signed by both parties. In

filing suit within one week of sending the proposed agreement to PPLM's counsel, Andritz's actions – deceptive or not – demonstrate that it did not intend to be bound by a tolling agreement that effectively precluded their ability to file suit for the remainder of 2013.

Most revealing are the communications between the parties. In the June 3 email, Castellon writes that "if you agree with these [revisions] I believe we can go ahead and get this signed." (Doc. 38-1: Ex. 4). This language indicates clearly that a contract would be formed upon signature of both parties ("we can go ahead") rather than mere assent to terms. Four days later, Castellon uses almost identical language in assessing the state of negotiations: "I understand you will present the revised Tolling Agreement to your client for signature, hopefully to be signed by early next week." (Doc. 38-1: Ex. 5). The email then continues: "*After signing*, we can each present our four proposed mediator names to the other to consider." (Id.) (emphasis added). The language here is clear that the event of "signing" possessed more than symbolic importance, but constituted the formation of a contract. Even PPLM's own communications reflect that the parties expected the documents to be signed. On June 17, Mr. Obie wrote: "I assume you will have the attached document signed and email copy back to me." (Id.).

Additionally, the bilateral nature of the contract – where mutual promises serve as consideration – cuts against PPLM's contention that a contract was formed in the absence of both signatures. "In bilateral contracts there are reciprocal promises, so that there is something to be done or forborne on both sides. . . ." Winders v. Kenan, 77 S.E. 687, 689 (N.C. 1913). Were this a unilateral or a "pay for performance" type contract, this issue may have come out differently. Under the agreement, both parties would be bound by the same obligation to forbear from filing suit. There is nothing in the contract to suggest an asymmetrical relationship where

7

the signature of one party carries more weight than the other. Both parties were assuming the same obligation, and the signature of both parties was anticipated. See generally (Doc. 38-1: Exs. 5-6).

Ultimately, the evidentiary record supports the finding that, although the parties neared the line, they never crossed over to form a contract. As such, there exists no tolling agreement for the Court to recognize or enforce. Accordingly, the Court **DENIES** the Defendants Motion for Partial Summary Judgment to Enforce Tolling Agreement (Doc. 37).

B. <u>Motion to Transfer</u>

The remaining motions – to enjoin the EDPA suit and to transfer to the EDPA and consolidate cases – turn on virtually the same facts and analysis, specifically, whether Plaintiff filed this suit anticipatorily or acted in bad faith. In the interests of economy, the Court addresses first (and spends the balance of analysis on) PPLM's motion to transfer. For obvious reasons, the success of PPLM's motion to transfer dictates, in large measure, the Court's decision as to whether to enjoin the EDPA suit. The principles of judicial economy dictate that cases among identical parties arising from the same facts and containing the same counsel should be treated as one case. The only question is the location of such suit, and this question is addressed more directly through the motion to transfer.

1. 1404(a) Factors

28 U.S.C. § 1404(a) allows a district court to transfer a suit to any district where the case might have been brought if it is for "the convenience of the parties and witnesses" or "in the interest of justice." The implementation of this seemingly direct provision, however, presents an unwieldy and fact-intensive analysis that resists easy formulation.

In considering a motion to transfer, courts should consider, among other things, eleven factors, including: (1) the plaintiff's choice of forum; (2) the residence of the parties; (3) access to evidence; (4) the availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses; (5) the possibility of a view by the jury; (6) the enforceability of a judgment; (7) the relative advantages and obstacles to a fair trial; (8) practical issues affecting trial expediency and efficiency; (9) the relative court congestion between the districts; (10) the interest in resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action; (11) the avoidance of conflict of laws. Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F.Supp. 446, 450-51 (W.D.N.C. 1989).

A defendant moving for transfer of forum from a district in which venue is proper "carries a particularly heavy burden" to demonstrate the need for transfer. Phillips v. S. Gumpert Co., Inc., 627 F.Supp. 725, 726-27 (W.D.N.C. 1986). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v, Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). In such motions, no single factor is dispositive. Id.

With the exception of the Plaintiff's choice of forum, the balance of factors here is largely indeterminate. Seven of the factors do not present any material issues for consideration; as to the few that invite analysis: the residence of the parties, convenience of witnesses, and expediency issues, both sides have made plausible showings to suggest that they break in their

9

favor, albeit only slightly.[1]  Normally, in light of the heavy burden placed upon the party seeking transfer, this stalemate would suffice to settle the issue against transfer as Defendants have not made a strong enough showing of inconvenience to the parties or witnesses to warrant a transfer.

Defendants, however, have made clear from the outset that their motion was not a matter of convenience or efficiency, but one of justice. Specifically, Defendants argue that the Court should transfer and consolidate this case with the EDPA case because Andritz acted in bad faith and filed anticipatorily, even as it was posturing to negotiate for a tolling agreement.[2]  Andritz, in contrast, denies that it filed anticipatorily and contends that it was merely exercising its legal right to bring suit in its district of residence.  On these grounds, Andritz argues that the Court should apply the "first-filed" rule and retain jurisdiction over this case.  PPLM maintains that exceptional circumstances in this case warrant exception to the first-filed rule.

2.  First Filed Rule and Exceptions

When similar lawsuits are filed in multiple forums, the Fourth Circuit adheres to the "first-filed" rule, which holds that the earlier-filed suit should have priority.  <u>Volvo Constr. Equip. N. Am., Inc., v. CLM Equip. Co., Inc.</u>, 386 F.3d 581, 594-95 (4th Cir. 2004) (internal citations omitted).  Multiple lawsuits are subject to the first-filed rule if the same factual issues provide the basis for each suit.  <u>Allied-Gen. Nuclear Serv's. v. Commonwealth Edison Co.</u>, 675

---

[1] The parties each maintain that the balance of factors favors them.  Summarized here in briefest form, those arguments are as follows: Andritz notes that a substantial amount of work under the contract was completed at its headquarters in Charlotte, North Carolina; that numerous witnesses are located in North Carolina and only subject to subpoena power in this district; and, that the commencement of discovery in this suit argues strongly against transfer where the parties would begin the discovery process anew.
    For its part, PPLM contends that having two Pennsylvania residents to one North Carolina resident – Andritz (USA) being a resident of Georgia – tips the residency balance in its favor.  Additionally, PPLM contends that more expected witnesses reside in Pennsylvania than North Carolina.  Finally, PPLM notes that discovery has not proceeded beyond the most rudimentary stage and should not factor heavily in a court's consideration.
[2] Having found that the parties did not form an enforceable tolling agreement, the Court focuses exclusively on PPLM's argument related to bad faith/anticipatory filing by Andritz.

F.2d 610, 611 n.1 (4th Cir. 1982). Some courts in the Fourth Circuit have used a three-factor test to determine whether cases are subject to the first filed rule based on: (1) the chronology of the filings; (2) the similarities of the parties involved; and, (3) the similarity of issues being raised. Remington Arms. Co., Inc. v Alliant Techsystems, Inc., 2004 WL 444574 at *2 (M.D.N.C. 2004 Feb. 25, 2004) (internal citations omitted). For reasons already discussed, this case falls squarely among the class normally subject to the first filed rule. The question here is whether an exception applies to justify transfer of this case.

The first-filed rule admits of exceptions when the balance of convenience weighs in favor of the second forum, or under "special circumstances." See e.g., Learning Network, Inc. v. Discovery Communications, Inc., 11 Fed. Appx. 297, 301 (4th Cir. 2001); Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937). Courts have discretion as to whether to apply the rule and can ignore the rule where "special circumstances" exist such as forum shopping, anticipatory filing, or bad faith filing.[3] See e.g., Id.; Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F.Supp.2d 357, 360 (W.D.N.C. 2003).

As Plaintiff filed suit in its home district, forum shopping is not an issue in this case. Therefore, to prevail on its motion, the Defendants must demonstrate that Plaintiff filed its suit in anticipation of a suit from Defendants, or that they filed in bad faith. The Court examines each of these.

---

[3] Other courts have refused to apply the first filed rule in various situations, including: when an action is filed in the midst of settlement negotiations, EMC Corp. v. Norand Corp., 89 F.3d 807, 814 (Fed.Cir. 1996); when the filing party does so with notice that the other party is about to file suit, Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 419 (8th Cir. 1999). Additionally, the Eighth Circuit has identified two factors which require greater scrutiny from a court. The first exists where the earlier-filed action is a declaratory judgment that is "indicative of a pre-emptive strike than a suit for damages or equitable relief." Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1007 (8th Cir. 1993). The second presents itself where the party that filed first was on notice that a lawsuit was imminent. Id. None of these cases present binding precedent on this Court, but serve as guidance on factors for consideration.

The concept of an anticipatory filing is a fluid one that is highly dependent on the factual context of a suit. It is most frequently found in what are known as "hip pocket" filings, where a party that should properly be a defendant in a suit files (often an action for declaratory judgment) pre-emptively and without informing the adversary in order to preserve a favored venue in the case of litigation. This occurs often in the midst of settlement negotiations between parties where the lawsuit serves as insurance to the earlier-filing party to guarantee favorable conditions for litigation.

In defense of its actions, Andritz argues that PPLM sought to delay the mediation process and were not in any position to file suit against Andritz. The Court finds these arguments unpersuasive as the communications between the parties bear no indication that Andritz was unsatisfied with the pace of negotiations. Additionally, counsel for PPLM repeatedly communicated to Andritz its desire to maintain flexibility within the mediation process for them to develop additional claims. The last of these representations occurred June 17 in the email noting that PPLM had signed the tolling agreement.

Nonetheless, the factual record here is not sufficient to support a showing that Andritz filed in in bad faith. The facts of this case are distinguishable from those cases where courts have found transfer to be warranted. Unlike Nutrition & Fitness, this is not a "hip pocket" filing by Andritz. Here, Andritz was a natural plaintiff insofar as they filed a suit for contract damages in their home district and promptly served Defendants. Although one of their two claims is for declaratory judgment, nothing in the suit indicates that it was intended to serve merely as a placeholder to reserve venue. Most importantly, Andritz had already communicated to PPLM the nature and content of their claims under the contract and the claims filed by them are

consistent with such communications. Finally, while Andritz had notice that PPLM intended to pursue its claims under the contract, there is no indication that Andritz filed in an attempt to race to secure its preferred venue.

Finally, while Andritz' actions in proposing a tolling agreement, pursuing such negotiations down to final details before stranding PPLM at the proverbial altar may seem objectionable to its adversary, there is nothing in the record sufficient to establish a finding of bad faith. Here, the evidentiary record is consistent with a reading that Andritz merely changed its mind about the tolling agreement and decided instead to file suit – behavior that is within the rights of a party. "Bad faith is 'not simply bad judgment or negligence, but implies the conscious doing of a wrong because of a dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.'" Black's Law Dictionary 139 (6th ed. 1990)). Ultimately, the party seeking transfer bears the "heavy burden" of demonstrating the need for such. Gumpert, 627 F.Supp. at 726-27. Here, Defendants are not able to meet such heavy burden.

Accordingly, the Court **DENIES** Defendants' Motion to Transfer Venue for Consolidation of Cases (Doc. 51) and **GRANTS** Plaintiffs' Motion to Enjoin Later-Filed Action (Doc. 49).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants Motion for Partial Summary Judgment to Enforce Tolling Agreement, (Doc. 37), is **DENIED**;

2. Defendants' Motion to Transfer Venue for Consolidation of Cases, (Doc. 49), is

**DENIED**;

3. Plaintiffs' Motion to Enjoin Prosecution of Later-Filed Action is **GRANTED,** and Defendants' suit in the Eastern District of Pennsylvania is hereby enjoined.

Robert J. Conrad, Jr.
United States District Judge